1  DAVID H. KRAMER, State Bar No. 168452
   JACOB VELTMAN, State Bar No. 247597
2  SARA E. ROWE, State Bar No. 295353
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
5  Facsimile:  (650) 565-5100
   Email:  dkramer@wsgr.com
6  Email:  jveltman@wsgr.com
   Email:  srowe@wsgr.com
7
   COLLEEN BAL, State Bar No. 167637
8  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
9  One Market Plaza
   Spear Tower, Suite 3300
10 San Francisco, CA 94105-1126
   Telephone:  (415) 947-2000
11 Facsimile:  (415) 947-2099
   Email:  cbal@wsgr.com
12
   *Attorneys for Defendant Square, Inc.*
13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17 shierkatz RLLP, a California registered limited )  Case No.  3:15-cv-02202-JST
   liability partnership,                          )
18                                                 )  **SQUARE, INC.'S NOTICE OF**
                    Plaintiff,                      )  **MOTION AND MOTION TO**
19                                                 )  **DISMISS FIRST AMENDED**
          v.                                       )  **COMPLAINT OR IN THE**
20                                                 )  **ALTERNATIVE TO STAY AND TO**
   SQUARE, Inc., a Delaware corporation,           )  **COMPEL ARBITRATION**
21                                                 )
                    Defendant.                      )  Date:  October 1, 2015
22                                                 )  Time: 2:00 PM
                                                   )  Courtroom: 9 – 19th Floor
23                                                 )  Before: Hon. Jon S. Tigar
                                                   )
24 _____ )

25

26

27

28

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

        A.      The Parties ................................................................................................ 3

        B.      The Parties' Agreement ............................................................................ 3

        C.      The Square Seller Agreement Requires This Dispute To Be Resolved
                Through Individual Arbitration ................................................................ 5

        D.      The Bankruptcy Law Firm's Lawsuit for Termination Under the Seller
                Agreement ................................................................................................ 6

III.    ARGUMENT ........................................................................................................ 8

        A.      An Action Is Properly Dismissed When All Claims Are Subject to
                Arbitration ................................................................................................ 8

        B.      The Seller Agreement Requires the Bankruptcy Law Firm To Arbitrate Its
                Claims on an Individual Basis .................................................................. 9

        C.      The Arbitration Provision Is Not Unconscionable ................................. 10

                1.      The Arbitration Provision Is Not Procedurally Unconscionable .............. 11

                2.      The Arbitration Provision Is Not Substantively Unconscionable ............. 12

                        a.      The Arbitration Provision Applies to Unruh Act Claims. ............. 13

                        b.      The Modification Clause is Permissible and Appropriate. ........... 13

                        c.      The Arbitration Provision is Not Overbroad. ............................... 15

                                i.      The Current Dispute Arises from the Seller Agreement. ...... 15

                                ii.     The Arbitration Provision Is Not Temporally Overbroad. .... 16

        D.      The Bankruptcy Law Firm's Alleged Unilateral Mistake in Interpreting the
                Seller Agreement Is Irrelevant. .............................................................. 19

        E.      There Are No Factual Issues Relating to Arbitration that Must Be Submitted
                to a Jury. .................................................................................................. 19

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24 Hour Fitness, Inc. v. Super. Ct.,* 66 Cal. App. 4th 1199 (1998)..................................14

*Alim v. KBR, Inc.*, 570 F. App'x 417 (5th Cir. 2014)....................................................18

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) ..........................12, 15

*AT&T Mobility, LLC v. Concepcion,* 131 S. Ct. 1740, 1747 (2011) .....................................13, 20

*AT&T Tech., Inc. v. Commun. Workers of Am.*, 475 U.S. 643 (1986) .............................................8

*Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522 (2004)..................................................18

*Bolter v. Super. Ct.*, 87 Cal. App. 4th 900 (2001)..................................................................15

*Brown v. CMH Mfg.*, No. 13-cv-31404, 2014 U.S. Dist. LEXIS 120648 (S.D.W.V. Aug. 29, 2014).....................................................................................................11

*Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126 (9th Cir. 2000) ............................9

*Cole v. Burns Int'l. Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997) .....................................12

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008) ......................................8

*Cuadras v. MetroPCS Wireless, Inc.*, No. CV-09-7897, 2011 U.S. Dist. LEXIS 156399 (C.D. Cal. Aug. 8, 2011) ..............................................................................20

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) ..................................................9

*Dean Witter Reynolds v. Super. Ct.*, 211 Cal. App. 3d 758 (1989)..................................11

*Desert Outdoor Advertising v. Super. Ct.*, 196 Cal. App. 4th 866 (2011) ........................19

*Dowling v. Farmers Ins. Exch.*, 208 Cal. App. 4th 685 (2012) ........................................19

*Dryer v. L.A. Rams*, 40 Cal. 3d 406 (1985).....................................................................16

*Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708 (2003).............................16

*Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829 (S.D.N.Y. 2012).......................................10

*Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571 (2007) .........................................11

*Glaude v. Macy's Inc.*, No. 12-5179-PSG, 2012 U.S. Dist. LEXIS 171418 (N.D. Cal. Dec. 3, 2012)..............................................................................................8

*GT Sec., Inc. v. Klastech GmbH*, No. 13-3090-JCS, 2014 WL 2928013 (N.D. Cal. June 27, 2014) ....................................................................................................8

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410 (1996) ...................19

-ii-

*Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976 (2005)..................................................................10

*Jones v. GMC*, 640 F. Supp. 2d 1124 (D. Ariz. 2009) ............................................................20

*Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-1103-JCS, 2014 U.S. Dist. LEXIS
81073 (N.D. Cal. June 11, 2014)...........................................................................9

*Klein v. Verizon Commc'ns, Inc.*, 920 F. Supp. 2d 670 (E.D. Va. 2013)................................16

*Major v. McCallister*, 302 S.W.3d 227 (Mo. Ct. App. 2009) .................................................10

*McNamara v. Royal Bank of Scot. Grp., PLC*, No. 11-cv-2137, 2012 U.S. Dist.
LEXIS 158580 (S.D. Cal. Nov. 5, 2012) ..............................................................12

*Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934 (N.D. Cal. 2011) ........................18

*Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305 (2005) ...................................11

*Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115 (2012) .......................13

*Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014) ....................................................10

*Oakey v. US Airways Pilots Disability Income Plan*, 723 F.3d 227 (D.C. Cir. 2013).................8

*Orloff v. Hollywood Turf Club*, 110 Cal. App. 2d 340 (1952).........................................17, 18

*Peng v. First Republic Bank*, 219 Cal. App. 4th 1462 (2013) ...............................................14

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223
(2012) ...................................................................................................................12

*Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102 (1997)...............................19

*Preston v. Ferrer*, 552 U.S. 346 (2008) .................................................................................20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) .................................14

*Rhodes v. Consumers' Buyline*, 868 F. Supp. 368 (D. Mass. 1993) .....................................16

*Roman v. Super. Ct.*, 172 Cal. App. 4th 1462 (2009) ............................................................14

*Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398 (2014)....................11

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir. 2003) .....................................9

*Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695 (2013)..................................14

*Snap-on Bus. Sols. Inc. v. O'Neil & Assocs., Inc.*, 708 F. Supp. 2d 669 (N.D. Ohio
2010)......................................................................................................................10

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ...........................9

*Torres v. Unum Life Ins. Co. of Am.*, No. 08-cv-1940, 2009 U.S. Dist. LEXIS 1170
(N.D. Cal Jan. 8, 2009).........................................................................................17

-iii-

*Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal 2013)
(Tigar, J.) ..................................................................................................9, 12, 15

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006) ...............................................11

*West v. Henderson*, 227 Cal. App. 3d 1578 (1991) ....................................................16

*Wolitarsky v. Blue Cross of Cal.*, 53 Cal. App. 4th 338 (1997) ......................................13

*Zaborowski v. MHN Gov't Servs.*, 936 F. Supp. 2d 1145 (N.D. Cal. 2013) .....................16

## STATUTES

9 U.S.C. §§ 2, 3 and 4 .............................................................................................1, 8

Cal. Civ. Code § 1670.5 ...........................................................................................14

Unruh Civil Rights Act, Cal. Civil Code § 51 ..............................................................7

## RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................................1, 8

JAMS Comprehensive Arbitration Rule 17 ..................................................................13

JAMS Comprehensive Arbitration Rule 24(h) ..............................................................13

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2015, at two o'clock in the afternoon, before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, Courtroom 9 – 19th Floor, 450 Golden Gate Avenue, San Francisco, Defendant Square, Inc. will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 12(b)(1) and 9 U.S.C. §§ 2, 3 and 4 for an order dismissing the First Amended Complaint ("FAC") filed by Plaintiff, or in the alternative, an order staying this action and compelling arbitration of all arbitrable issues.  Although this motion, in the interests of judicial efficiency, addresses only arbitration, Square reserves all rights to assert additional defenses, including under Rule 12(b), if the relief sought by this motion is not granted.

The motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Simo Leone filed on June 25, 2015 (Dkt. #15) and exhibits thereto; the Declaration of Sara Rowe ("Rowe Decl.") and exhibits thereto; the Proposed Order; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant Square, Inc. ("Square") brings this motion to dismiss Plaintiff's First Amended Complaint, or in the alternative, to stay the current action in favor of arbitration, because Plaintiff agreed this dispute would be resolved exclusively through binding arbitration.

Square develops card readers and payment-related software and services in the United States.  Its services allow customers who sign up for accounts to accept card payments through their Apple and Android mobile devices, including smartphones.  In order to offer these payment processing services to customers, Square maintains agreements with financial institutions.  These agreements prohibit Square from offering its services to bankruptcy attorneys.  Bankruptcy attorneys are considered high-risk merchants because their clients, who invariably are in

financial duress, may seek to discharge their payment card charges, including amounts paid to their attorneys.

Plaintiff shierkatz RLLP (the "Bankruptcy Law Firm") is a bankruptcy law firm that previously signed up for and used a Square account. As a condition of so doing, the Bankruptcy Law Firm agreed that it would not use Square's services to process bankruptcy-related transactions. When Square was informed that the Bankruptcy Law Firm was using Square's services in violation of that agreement, it deactivated the account. Square was expressly authorized to do so under the terms of its written Seller Agreement with the Bankruptcy Law Firm.

The Bankruptcy Law Firm immediately initiated litigation against Square alleging that Square's termination of its account violated California's Unruh Civil Rights Act. According to the Bankruptcy Law Firm, Square must offer its payment card processing services to all lawful businesses or to none at all.

The dubious merits of the Bankruptcy Law Firm's novel theory aside, this dispute belongs in arbitration. In the course of creating an account with Square, the Bankruptcy Law Firm – like all other account holders – agreed to the Square Seller Agreement. The Agreement unambiguously requires claims arising out of or relating to use of Square's services to be arbitrated on an individual (non-class) basis.

Since originally filing this action in state court, the Bankruptcy Law Firm has employed a series of evasive maneuvers aimed at depriving Square of the benefits of the arbitration clause. The Bankruptcy Law Firm first amended, and then dismissed, its complaint in state court. It then moved the case to federal court, and then again amended the complaint, littering it with factually—and legally—unsupported arguments against arbitration. According to the Bankruptcy Law Firm, the arbitration agreement is procedurally and substantively unconscionable, illusory, and subject to rescission due to the Bankruptcy Law Firm's alleged subjective misinterpretation of it. The Bankruptcy Law Firm also demands a jury trial on all issues relating to arbitration. As explained below, none of these arguments has any merit.

1    Pursuant to the strong federal policy in favor of arbitration, as well as established law

2    concerning online agreements, the Square Seller Agreement (including the arbitration provision)

3    is valid and enforceable.  Accordingly, Square respectfully requests that this Court issue an order

4    dismissing the Bankruptcy Law Firm's claims in their entirety, without prejudice to its ability to

5    have those claims decided in arbitration, or in the alternative that the Court stay this action and

6    compel arbitration.

7    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

8        **A.    The Parties**

9        Square is a Delaware corporation headquartered in San Francisco, California.  FAC ¶ 2.

10   Square develops card readers and software applications that enable customers to accept card

11   payments using their mobile devices.  Millions of individuals and businesses use Square's

12   services to process card payments.  *Id.* ¶ 5.

13       The Bankruptcy Law Firm practices bankruptcy law in San Francisco.  FAC ¶ 1.

14       **B.    The Parties' Agreement**

15       Square's relationship with its account holders is governed by the Square Seller

16   Agreement ("Seller Agreement" or "Agreement").  A customer can create a Square account

17   either through the Square website or the mobile application.  In either case, Square requires the

18   customer to go through a registration process in which the customer inputs information through a

19   series of forms.  Although Square has revised the wording of the forms over time, the registration

20   process has consistently required that account holders assent to the Seller Agreement as part of

21   the account creation process before they can use Square's services.  Leone Decl. ¶ 8.[1]

22       The Bankruptcy Law Firm created a Square account on July 14, 2013 by downloading

23   Square's mobile application onto an iPhone and registering for an account through that mobile

24

25   _____

     [1] Citations to the "Leone Decl." refer to the Declaration of Simo Leone filed on June 25,
26   2015 (Dkt. #15) in support of Square's motion to dismiss Plaintiff's original complaint.  For the
     Court's ease of reference, a courtesy copy of that declaration is being filed concurrently with this
27   motion.

28

application.  *Id.* ¶ 4; FAC ¶ 6.  The account was created by a partner of the Bankruptcy Law Firm named Matthew Shier, who has practiced law in California since 1977.  *See* Leone Decl. ¶ 4 (account was created by Mr. Shier); Rowe Decl. ¶ 2 & Ex. A (attaching page from the Bankruptcy Law Firm website); *id.* ¶ 3 & Ex. B (attaching attorney information from the State Bar of California website).  The registration form that the Bankruptcy Law Firm completed that day included notice that by continuing the registration process by clicking a "Continue" button, it was agreeing to the Seller Agreement.  Indeed, the notice actually stated: "By continuing, I agree to the **Square Seller Agreement** and **E-sign Consent Agreement**."  Leone Decl.  ¶ 7.  It looked like this:



To type the required numbers in the box, a customer had to read through the notice before getting to the keypad on his or her phone.  By clicking on the bolded portion of the notification, the Bankruptcy Law Firm (like any customer) could view the full text of the Seller Agreement.

1    *Id.*   ¶ 8.   The Bankruptcy Law Firm could not have completed its registration with Square

2    without clicking the "Continue" button and thereby affirmatively agreeing to the Seller

3    Agreement.  *Id.*

4         The registration pages of the Square mobile application that were operative when the

5    Bankruptcy Law Firm created its account are attached to the Leone Declaration as Exhibit 1.

6    The specific Seller Agreement to which the Bankruptcy Law Firm agreed is attached as

7    Exhibit 2.

8    **C.   The Square Seller Agreement Requires This Dispute To Be Resolved**
     **Through Individual Arbitration**

9

10        A number of provisions of the Seller Agreement are relevant to this Motion.

11        First, the Seller Agreement provides for mandatory arbitration of all disputes between

12   Square and its customers, subject to certain inapplicable exceptions.  In pertinent part, the Seller

13   Agreement states:

14       **51. Binding Individual Arbitration**
         You and Square agree to arbitrate all Disputes. Arbitration is more informal than a
15       lawsuit in court and seeks to resolve disputes more quickly. Instead of a judge or a
         jury, the case will be decided by a neutral arbitrator who has the power to award
16       the same damages and relief that a court can. ANY ARBITRATION UNDER
         THIS AGREEMENT WILL BE ONLY BE ON A INDIVIDUAL BASIS;
17       CLASS ARBITRATIONS, CLASS ACTIONS, PRIVATE ATTORNEY
         GENERAL ACTIONS, AND CONSOLIDATION WITH OTHER
18       ARBITRATIONS ARE NOT PERMITTED, AND YOU ARE WAIVING YOUR
         RIGHTS TO HAVE YOUR CASE DECIDED BY A JURY AND TO
19       PARTICIPATE IN A CLASS ACTION AGAINST SQUARE. If any provision of
         this arbitration agreement is found unenforceable, the unenforceable provision
20       shall be severed, and the remaining arbitration terms shall be enforced (but in no
         case shall there be a class arbitration). All Disputes shall be resolved finally and
21       exclusively by binding individual arbitration with a single arbitrator administered
         by the American Arbitration Association (www.adr.org) or JAMS
22       (www.jamsadr.org) according to this provision and the applicable arbitration rules
         for that forum. Consumer claimants (individuals whose transaction is intended for
23       personal, family, or household use) may elect to pursue their claims in their local
         small-claims court rather than through arbitration . . . .
24

25   Leone Decl., Ex. 2 at ¶ 51.

26        Second, the Seller Agreement expressly provides that Square's services may not be used

27   to accept payment for the services of "bankruptcy attorneys," as well as several other types of

28

businesses that run high risks of customer charge-backs such as casinos, drug paraphernalia retailers, and escort services.  *Id.* ¶ 6.

Third, the Seller Agreement provides that the Agreement and any disputes between Square and its customers "will be governed by California law and/or applicable federal law (including the Federal Arbitration Act) as applied to agreements entered into and to be performed entirely within California[.]"  *Id.* ¶ 52.

Finally, the Seller Agreement provides that it is an integrated agreement—that it is a "complete statement of the agreement between [the customer] and Square"—and that if a conflict arises between the Seller Agreement and any other Square agreement or policy, the Seller Agreement controls:

> Except as expressly provided in this Agreement, these terms are a complete statement of the agreement between you and Square, and they describe the entire liability of Square and its vendors and suppliers (including processors) and your exclusive remedy with respect to your access and use of the Services.  In the event of a conflict between this Agreement and any other Square agreement or policy, this Agreement shall prevail on the subject matter of this Agreement.  If any provision of this Agreement is invalid or unenforceable under applicable law, then it shall be changed and interpreted to accomplish the objectives of such provision to the greatest extent possible under applicable law, and the remaining provisions will continue in full force and effect . . . .

*Id.* ¶ 57.

### D.    The Bankruptcy Law Firm's Lawsuit for Termination Under the Seller Agreement

Square deactivated the Bankruptcy Law Firm's account in April 2015 after learning that it was using Square to accept payments for legal services from its bankruptcy clients, in violation of Section 6 of Square's Seller Agreement.  FAC ¶ 7.  Within days, the Bankruptcy Law Firm filed a putative class action against Square in San Francisco County Superior Court, *shierkatz RLLP v. Square, Inc.*, Civil Action No. CGC-15-545398.  In its original state court complaint, the Bankruptcy Law Firm alleged that it signed up for the Square service on the Square website and was "entrap[ped]" into registering for the Square service (and agreeing to the Seller Agreement) by supposedly vague and misleading language on the website.  Those allegations

-6-

were false.  The webpage reproduced in the original complaint that allegedly contained the misleading language did not even appear in Square's online registration flow as of the date the Bankruptcy Law Firm registered its account.  That language (which was not vague or misleading) appeared only on a later version of the website.  *See* Leone Decl. ¶ 9; Rowe Decl. ¶ 4 & Ex. C at 3.  Moreover, the Bankruptcy Law Firm did not register for an account through the Square website as it averred in its complaint, but instead registered through the Square mobile application.  Rowe Dec., Ex. C ¶ 7 (original state court complaint discussing alleged registration through Square website); Leone Decl. ¶ 9.  The Bankruptcy Law Firm jad presented a fabricated account of the registration process.

The Bankruptcy Law Firm tried to rectify the fabrication in an amended state court complaint, but it again included allegations regarding its supposed "entrapment" and a screen shot of a webpage that had nothing to do with the registration process it actually undertook to create its Square account through Square's mobile application.   Rowe Decl., Ex. D at 5 (screenshot of content that was not part of the registration process in July 2013); *id.*, Ex. D ¶ 8 (discussing alleged registration through Square website); Leone Decl. ¶ 9.

On May 15, 2015, the Bankruptcy Law Firm voluntarily dismissed its state court action and refiled in this Court.  Dkt. #1.  On June 25, 2015, Square moved to dismiss the original complaint on the grounds that the Seller Agreement required disputes between the parties to be submitted to arbitration.   Dkt. #14.   Instead of responding to the motion to dismiss, the Bankruptcy Law Firm amended its complaint yet again—constituting the 4th version of its complaint against Square—on July 15, 2015. Dkt. #22.

The FAC asserts a single cause of action for violation of the Unruh Civil Rights Act (Cal. Civ. Code § 51).  FAC ¶ 40.  The Bankruptcy Law Firm claims that Square is prohibited under California law from refusing to facilitate payment card transactions relating to any lawful business or service, and it seeks to represent a nationwide class consisting of "all Persons to whom [Square] has ever sent a Final Deactivation Notice constituting Post-Termination Unruh

Law Violations despite the fact such a Person was not accepting payments in connection with any . . . illegal activity or illegal goods[.]" FAC ¶ 30.

The Bankruptcy Law Firm appears to concede that it assented to the Seller Agreement, but it contends that the arbitration provision of the Seller Agreement is unenforceable for a variety of reasons. As explained below, the Seller Agreement and the arbitration provision it contains are valid and enforceable.

## III.   ARGUMENT

### A.   An Action Is Properly Dismissed When All Claims Are Subject to Arbitration.

An action is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if all claims are arbitrable under the Federal Arbitration Act ("the FAA"). *Glaude v. Macy's Inc.*, No. 12-5179-PSG, 2012 U.S. Dist. LEXIS 171418, at *9 (N.D. Cal. Dec. 3, 2012) (noting that "the court loses its subject matter jurisdiction over any claims subject to [an] arbitration clause") (citing *AT&T Tech., Inc. v. Commun. Workers of Am.*, 475 U.S. 643, 648-50 (1986) (explaining how arbitration clauses affect district courts' jurisdiction)).[2]

The FAA declares all arbitration agreements to be "valid, irrevocable, and enforceable" as a matter of federal law. 9 U.S.C. § 2. "A court's role in applying the FAA is 'limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, the

---

[2] *See also GT Sec., Inc. v. Klastech GmbH*, No. 13-3090-JCS, 2014 WL 2928013, at *17-18 (N.D. Cal. June 27, 2014) ("a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce an arbitration provision'") (citation omitted); *Oakey v. US Airways Pilots Disability Income Plan*, 723 F.3d 227, 231 (D.C. Cir. 2013) (holding that dismissal under Rule 12(b)(1) was proper because a "mandatory arbitration provision deprived the district court of jurisdiction"). The Bankruptcy Law Firm asserts in the FAC that by moving to dismiss the original complaint (instead of moving to compel arbitration), Square "waived" its right to arbitration. *See* FAC ¶ 13. The suggestion is absurd and, among other things: (1) ignores the abundant caselaw that moving to dismiss is appropriate; (2) is unsupported by Plaintiffs' own cases; (3) is inconsistent with governing law concerning conduct relevant to a determination of waiver, *see, e.g., Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008); and (4) ignores the strong federal policy favoring arbitration.

FAA requires the court to enforce the arbitration agreement in accordance with its terms.'" *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-1103-JCS, 2014 U.S. Dist. LEXIS 81073, at *34 (N.D. Cal. June 11, 2014) (dismissing complaint and compelling arbitration where plaintiff had agreed to arbitrate the claims at issue) (quoting *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  The party resisting arbitration has the burden of proving that the claims at issue are not arbitrable.  *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal 2013) (Tigar, J.).  The Supreme Court has made clear that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In ruling on a 12(b)(1) motion to dismiss, courts may look beyond the pleadings to resolve factual disputes, and the burden is on the party opposing the motion to establish subject matter jurisdiction (*i.e.*, the existence of non-arbitrable claims).  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

### B.      The Seller Agreement Requires the Bankruptcy Law Firm To Arbitrate Its Claims on an Individual Basis.

The Bankruptcy Law Firm affirmatively agreed to Square's online Seller Agreement (including the arbitration provision) as a condition of registering for Square's payment services. The registration form that the Bankruptcy Law Firm used (1) contained a "Continue" button that it was required to click in order to create its Square account and advance to the next screen; (2) advised the Bankruptcy Law Firm in clear and conspicuous language that it would have had to read to type its responses, that clicking the button constituted its agreement to the Seller Agreement; and (3) provided a link to the full language of the Seller Agreement.  Leone Decl. ¶¶ 7-8 and Ex. 1.  This is precisely the type of online agreement that court after court has found enforceable.  *See, e.g., Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal.

1   2011) (enforcing online user agreement where "Allow [Access]" button was near disclaimer

2   stating "By using YoVille, you [] agree to the YoVille Terms of Service").[3]

3       The Ninth Circuit recently addressed this issue in *Nguyen v. Barnes & Noble, Inc.*, 763

4   F.3d 1171 (9th Cir. 2014), which concerned the enforceability of an arbitration provision found

5   in Barnes & Noble's online terms of service.  After surveying many cases on the topic, the Ninth

6   Circuit concluded that in those instances—such as here—in which online services expressly

7   advise users that clicking a button constitutes their assent to an online agreement, the agreement

8   is fully enforceable.  *Id.* at 1178 n.1 (citing cases).

9       The Square mobile application registration process undertaken by the Bankruptcy Law

10  Firm required affirmative assent to the Seller Agreement, and plainly and conspicuously advised

11  that clicking the "Continue" button constituted such assent.  Leone Decl. ¶ 7.  The Agreement

12  advised users in all capital letters, in a separate section titled "Binding Individual Arbitration,"

13  that they had to agree to individual arbitration as a condition of using Square's services.  Leone

14  Decl., Ex. 2 at ¶ 51.  Indeed, the fact that the Agreement contained an arbitration provision was

15  highlighted in the Agreement's introductory paragraph.  *Id.* at 1.  Accordingly, this action should

16  be dismissed or stayed in favor of the arbitration to which the Bankruptcy Law Firm and Square

17  agreed.

18      **C.      The Arbitration Provision Is Not Unconscionable.**

19      The Bankruptcy Law Firm alleges that the arbitration provision in the Seller Agreement

20  is unconscionable and therefore unenforceable.  FAC ¶ 25.  To set aside an agreement on this

21  _____

22      [3] *See also, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012)
    (enforcing online agreement where "Sign Up" button was next to disclaimer stating that "By

23  clicking Sign Up, you are indicating that you have read and agree to the Terms of Service");
    *Snap-on Bus. Sols. Inc. v. O'Neil & Assocs.*, 708 F. Supp. 2d 669, 682-83 (N.D. Ohio 2010)

24  (enforcing online agreement where "Enter" button was near disclaimer stating that "The use of
    and access to the information on this site is subject to the terms and conditions set out in our

25  legal statement."); *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009) (enforcing
    online agreement where "Submit for Matching Pros" button was proximate to disclaimer stating

26  that "By submitting you agree to the Terms of Use."); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d
    976, 979 (2005) (enforcing online agreement where webpages leading to submission of online

27  purchases stated that "All sales are subject to Dell's Terms and Conditions of Sale").

28

basis, the Bankruptcy Law Firm would have to demonstrate that the provision is *both* procedurally *and* substantively unconscionable. *See, e.g., Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 402 (2014). It can demonstrate neither.

### 1.    The Arbitration Provision Is Not Procedurally Unconscionable.

The Bankruptcy Law Firm asserts that the Seller Agreement is procedurally unconscionable because it is "a contract of adhesion[.]" FAC ¶ 25. That is incorrect. While the Seller Agreement is a form contract, such contracts are routinely enforced under California law. A form agreement is procedurally unconscionable only if the party challenging the agreement can show it had no choice but to contract with the enforcing party. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) (credit card processing agreement not procedurally unconscionable where "[Plaintiff] failed to allege he could not have obtained merchant credit card services from another source on different terms."); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices."); *Dean Witter Reynolds v. Super. Ct.*, 211 Cal. App. 3d 758, 769 (1989) ("there is ample authority for the proposition that the existence of reasonably available market alternatives defeats a claim of adhesiveness.").

The Bankruptcy Law Firm does not assert that Square was its only credit processing option, and it could not. The arbitration provision is therefore not procedurally unconscionable.[4] While the Bankruptcy Law Firm points to the absence of an opt-out provision, such a provision is not necessary to avoid procedural unconscionability. Opt-out provisions can cure procedural unconscionability, but if the agreement is not unconscionable to begin with, an opt-out is unnecessary. *See, e.g,, Brown v. CMH Mfg.*, No. 13-cv-31404, 2014 U.S. Dist. LEXIS 120648,

---

[4] The court in *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571 (2007) held that "absent unusual circumstances," market choices limit any procedural unconscionability inherent in a form agreement, but do not eliminate it entirely. *Id.* at 585. However, the court further held that such unusual circumstance justifying a finding of no procedural unconscionability exists "[w]here the plaintiff is highly sophisticated[.]" *Id.* at 585 n.8. Here, the Bankruptcy Law Firm is unquestionably a sophisticated plaintiff.

at *25-26 n.5 (S.D.W.V. Aug. 29, 2014) ("The plaintiff does not cite any cases where an Arbitration Agreement was unconscionable because there was no opt-out provision."); *McNamara v. Royal Bank of Scot. Grp., PLC*, No. 11-cv-2137, 2012 U.S. Dist. LEXIS 158580, at *24 (S.D. Cal. Nov. 5, 2012) (allegation that arbitration agreement lacked opt-out did not establish unconscionability).

Because Plaintiff must establish *both* procedural and substantive unconscionability, this Court need go no further to find that the arbitration provision is not unconscionable.  *Uptown Drug Co.,* 962 F. Supp. 2d at 1182 (where party asserting unconscionability of arbitration clause fails to demonstrate that it is procedurally unconscionable "the court need not inquire into whether the agreement is substantively unconscionable.").

## 2.    The Arbitration Provision Is Not Substantively Unconscionable.

Even if this Court were inclined to consider substantive unconscionability, it is not to be found in Square's arbitration provision.  The test for substantive unconscionability is whether a provision is "so one-sided as to 'shock the conscience.'"  *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012).  The arbitration provision at issue is commonplace and not remotely shocking.  If it is unusual at all, it is because its terms are particularly plaintiff-friendly.  Further, *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 102, (2000), sets out "five minimum requirements" of a lawful arbitration agreement, explaining that an arbitration agreement is lawful if it:

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

*Id.* (citing *Cole v. Burns Int'l. Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)).  The arbitration provision in the Seller Agreement meets all of these requirements.  Leone Decl., Ex. 2 at ¶ 51 (providing that disputes will be decided by a neutral arbitrator, that the arbitrator will have the power to award all types of relief that a court could award, and that Square will pay the

arbitrator's fees); JAMS Comprehensive Arbitration Rule 17 (providing for mandatory document and deposition discovery); JAMS Comprehensive Arbitration Rule 24(h) (providing that arbitral decisions must be in writing).

The three bases on which the Bankruptcy Law Firm alleges that the arbitration provision is substantively unconscionable all lack merit.

### a.    The Arbitration Provision Applies to Unruh Act Claims.

The Bankruptcy Law Firm first argues that the arbitration provision is substantively unconscionable because it would require arbitration of Unruh Act claims, on the theory that this "entirely nullif[ies] the State of California's ability to enforce its anti-discrimination policy through the use of private enforcement mechanisms written into the Unruh Law[.]" FAC ¶ 26. The argument is misguided in at least two respects. First, the California Court of Appeal has already held that Unruh Act claims are arbitrable where, as here, they are encompassed by the plain language of the parties' arbitration agreement. *See Wolitarsky v. Blue Cross of Cal.*, 53 Cal. App. 4th 338, 348 (1997) (reversing denial of motion to compel arbitration of Unruh Act claims). Second and even more fundamentally, the FAA "preempts any rule or policy rooted in state law" that prohibits the arbitration of any particular type of claim. *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1136 (2012); *see AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA."). The Bankruptcy Law Firm's Unruh Act claim is properly subject to arbitration.

### b.    The Modification Clause is Permissible and Appropriate.

Next, the Bankruptcy Law Firm seeks to avoid arbitration on the ground that the Seller Agreement is illusory, and therefore unconscionable, because it contains a modification clause authorizing Square to amend the Seller Agreement from time to time, upon reasonable notice. FAC ¶¶ 18-19. That argument should be rejected for at least three reasons.

As an initial matter, because the Bankruptcy Law Firm is citing the modification provision to challenge the enforceability of the Seller Agreement as a whole, and not just the

arbitration provision specifically, enforceability should be decided by the arbitrator and not this Court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (addressing "severability" doctrine and holding that challenges to enforceability of a contract containing an arbitration provision, as opposed to the arbitration provision itself, are to be decided by the arbitrator). Its challenge to the modification provision therefore provides no basis for the Bankruptcy Law Firm to resist arbitration here.

Second, the Bankruptcy Law Firm's claim that a modification clause is *per se* unconscionable ignores well-established California law enforcing agreements containing modification clauses. *See, e.g.*, *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013) (reversing order denying motion to compel arbitration; "[I]t has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory[.]"); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1473-74 (2013) (reversing order denying motion to compel arbitration; "[W]e fail to see how such a provision can be deemed 'so one-sided as to shock the conscience.'") (citation omitted); *24 Hour Fitness, Inc. v. Super. Ct.,* 66 Cal. App. 4th 1199, 1214 (1998) ("Nautilus's discretionary power to modify the terms of the personnel handbook in writing [] indisputably carries with it the duty to exercise that right fairly and in good faith. So construed, the modification provision does not render the contract illusory.") (internal citation omitted). Notably, the Bankruptcy Law Firm does not allege that Square has actually modified the Seller Agreement in any way affecting the Bankruptcy Firm, or that the existence or application of the modification clause would shock the conscience.

Third, the enforceability of the arbitration provision does not turn on the enforceability of the modification provision. Under California law, if an agreement contains an objectionable clause, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1477-78 (2009); *see also* Cal. Civ. Code § 1670.5(a) (holding that a court faced with an unconscionable clause need not disregard the clause entirely, but "may so limit the application of any unconscionable

clause as to avoid any unconscionable result."); *Armendariz*, 24 Cal. 4th at 122 (agreement unenforceable only if "'permeated' by unconscionability"); *see also Bolter v. Super. Ct.*, 87 Cal. App. 4th 900, 910 (2001) (enforcing arbitration agreement and disregarding clause providing that arbitrations must take place in Utah; "It is not necessary to throw the baby out with the bath water.").  Consistent with established California law, the Square Seller Agreement expressly requires that any invalid or unenforceable provision be severed if necessary to save the remainder of the agreement.  Leone Decl., Ex. 2 at ¶ 52.  Accordingly, even if the modification provision were unconscionable (which it is not), it would not affect the enforceability of the Seller Agreement as a whole or the arbitration provision, or provide a basis for the Bankruptcy Law firm to avoid its agreement to arbitrate.

### c.      The Arbitration Provision is Not Overbroad.

Finally, the Bankruptcy Law Firm argues that Square's arbitration provision is unconscionable because it has "infinite scope and duration." FAC ¶ 15.  It claims in particular that (1) the definition of the "Disputes" subject to arbitration is overbroad because it is not limited to those arising from the Seller Agreement and the use of Square's services (FAC ¶ 14; *see also* Leone Decl., Ex. 2 at ¶ 59 (definition of "Dispute")), and (2) the arbitration provision is temporally overbroad because it would cover claims based on conduct occurring after Square terminated its account.  Both arguments are meritless.

### i.      The Current Dispute Arises from the Seller Agreement.

In the context of this case, the Bankruptcy Law Firm's claim that the arbitration agreement is overbroad because it could be invoked with respect to claims unrelated to the Seller Agreement is merely hypothetical.  The only claim that is currently before this Court is whether Square lawfully terminated the Bankruptcy Law Firm's Square account.  That claim arises directly from the Seller Agreement and the Bankruptcy Law firm's use of Square's services.  The possibility that Square might seek to require a different plaintiff to arbitrate unrelated claims under other circumstances provides no basis for the Bankruptcy Law Firm to avoid arbitrating the current claim, which is plainly properly covered by the arbitration provision.  *See Uptown*

*Drug Co.*, 962 F. Supp. 2d at 1186 (a claim need only "touch matters covered by the contract containing the arbitration clause" to fall within the scope of arbitration provision) (citation omitted).  As the California Court of Appeal observed in *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, (2003):

> That some hypothetical claims might be beyond the reasonable expectations of the adhering party is no reason to reject its application to a matter which is clearly within the reasonable expectations of the parties.

*Id.* at 722; *see also Dryer v. L.A. Rams*, 40 Cal. 3d 406, 417 (1985) (arbitration agreement was not unconscionable as to plaintiffs' claims merely because an inapplicable exception to the agreement existed); *West v. Henderson*, 227 Cal. App. 3d 1578, 1588 (1991) (limitation-on-actions provision was not unconscionable as applied to plaintiff's claims merely because it might hypothetically be applied in an unconscionable way to another plaintiff; "we reject this hypothetical observation as a reason to find the provision substantively unconscionable"); *Zaborowski v. MHN Gov't Servs.*, 936 F. Supp. 2d 1145, 1156 (N.D. Cal. 2013) (agreement requiring arbitration to be conducted in San Francisco was not unconscionable as applied to plaintiffs residing in U.S., even though it might "hypothetical[ly] . . . be unconscionable to an MFL Consultant stationed . . . in Djibouti"); *Rhodes v. Consumers' Buyline, Inc.*, 868 F. Supp. 368, 372 (D. Mass. 1993) ("Here, the dispute arises from the subject matter of the Agreement itself and thus does not raise the issue of the possible overbreadth of the arbitration clause."); *Klein v. Verizon Commc'ns, Inc.*, 920 F. Supp. 2d 670, 674 (E.D. Va. 2013) ("Klein fails to show substantive unconscionability [as to arbitration clause] where he only suggests hypothetical situations").

### ii.    The Arbitration Provision Is Not Temporally Overbroad.

Similarly hypothetical is the Bankruptcy Law Firm's assertion that the arbitration agreement is temporally overbroad.  The Bankruptcy Law Firm asserts that Square's policy of prohibiting its payment processing services to be used for bankruptcy-related transactions continued in existence after its account was terminated.  *See* FAC ¶ 11.  It contends that, in this lawsuit, Square seeks to apply the arbitration provision to "Post-Termination Unruh Act

Violations" and that such application is improper. *Id.* ¶ 15.  Critically, however, the Bankruptcy Law Firm does not allege that it was actually discriminated against by Square after its account was terminated in April 2015.  For instance, it does not allege that it ever sought to re-open its Square account, much less that Square rejected or terminated it a second time.  In fact, it does not allege that it had any interaction whatsoever with Square after its account was terminated, and thus has no basis for any post-termination claim.[5]  Thus, its challenge to the arbitration provision as temporally overbroad fails because it is again purely hypothetical.  *See* Section III.C(2)(c)(i), *supra*.

Under the circumstances, the Bankruptcy Law Firm *could not* assert a claim for alleged discrimination occurring after its account was terminated.  It lacks standing to pursue any such claim because the Unruh Act confers standing only on plaintiffs *who have actually attempted to avail themselves of the service in question and have been denied it*.  *See Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 418-20 (2008) ("The mere fact that Surrey became aware TrueBeginnings was offering a discount policy for women subscribers at the time he accessed its Web site did not constitute a denial of his antidiscrimination rights under [the Unruh Act]. . . .  Because he did not attempt to or actually subscribe to TrueBeginnings's services, Surrey did not suffer discrimination in any sense other than 'in the abstract.'"); *Torres v. Unum Life Ins. Co. of Am.*, No. 08-cv-1940, 2009 U.S. Dist. LEXIS 1170, at *27-28 (N.D. Cal Jan. 8, 2009) ("[T]he court must decline to grant plaintiff standing. Plaintiff acknowledges that her harm would only be realized through a series of hypothetical events: She would first have to sign the settlement agreement, apply for insurance from defendant, and then be rejected by defendant based on discrimination.").

*Orloff v. Hollywood Turf Club*, 110 Cal. App. 2d 340 (1952) is instructive.  In *Orloff*, the plaintiff was ejected from the defendant race track and was told that should he "thereafter, at any

---

[5] The Bankruptcy Law Firm should not be allowed to change its allegations again to provide the fifth version of its story.

1   time, purchase a ticket or tender the cost of admission he would not be admitted to the track and,

2   if by chance he should happen to be admitted he would be ejected." *Id.* at 341.  The plaintiff

3   sued under the Unruh Act's statutory predecessor, and claimed "that he was entitled to damages

4   for his nonadmission or ejection on each and every racing day the track was open thereafter

5   within three years of the date of the filing of his complaint, even though he had not personally

6   appeared at the track or purchased a ticket or been ejected on any of such days." *Id.* at 341-42.

7   The court rejected the plaintiff's theory of liability, holding that he lacked standing to bring

8   claims for nonadmission or ejection for days he had not actually attempted to enter the track.  *Id.*

9   at 344.

10         Finally, even if the Bankruptcy Law Firm had standing to assert a post-termination claim

11   and had actually asserted one, it would not alter the analysis.  There is nothing unconscionable

12   about an arbitration provision that applies on its face to pre-existing claims or claims that arise

13   after the termination of the operative agreement.  *See Monzon v. S. Wine & Spirits of Cal.*, 834 F.

14   Supp. 2d 934, 941 (N.D. Cal. 2011) (arbitration provision applied to claims arising after

15   termination of employment; "Because the Mutual Agreement does not limit arbitration to claims

16   that arise out of or occur during Plaintiff's employment, it is irrelevant whether Plaintiff's

17   employment was terminated in May 2010."); *Alim v. KBR, Inc.*, 570 F. App'x 417, 420 n.5 (5th

18   Cir. 2014) ("Alim also argued that his fraud and breach of arbitration agreement claims pertain to

19   conduct after his termination and therefore fall outside the scope of the DRP. However, the

20   DRP's definition of a dispute that is subject to arbitration does not contain any temporal

21   limitations[.]"); *see also Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522, 1530 (2004)

22   ("We agree that an employment application can contain an arbitration clause regarding disputes

23   arising out of the subsequent employment.").

24         For all these reasons, Square's arbitration agreement is enforceable against the

25   Bankruptcy Law Firm, and the case should be dismissed in favor of arbitration.

26

27

28

**D.    The Bankruptcy Law Firm's Alleged Unilateral Mistake in Interpreting the Seller Agreement Is Irrelevant.**

The Bankruptcy Law Firm also astonishingly contends that it misconstrued the Seller Agreement as governing the relationship between the Bankruptcy Law Firm and its clients, not the relationship between the Bankruptcy Law Firm and Square.  FAC ¶ 20.  This alleged misunderstanding is not credible, particularly coming from a law firm plaintiff, when the first line of the Seller Agreement states that "[t]his Seller Agreement ('Agreement') is a legal agreement between you ('you,' 'your') and Square, Inc."  Leone Decl., Ex. 2 at 1.  Indeed, given the Bankruptcy Law Firm's procedural gamesmanship to this point, this latest gambit should be dismissed out of hand.

But even if credited, it would make no difference.  "A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement."  *Desert Outdoor Advertising v. Super. Ct.*, 196 Cal. App. 4th 866, 872 (2011) (citing *Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1109 (1997)).  Similarly, a party's subjective misinterpretation of a contract is "at most a mistake of law" that is not a defense to enforcement.  *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1421 (1996); *see also Dowling v. Farmers Ins. Exch.*, 208 Cal. App. 4th 685, 699 (2012) (similar).  Thus, even if the Bankruptcy Law Firm did misinterpret the Seller Agreement, it is no basis to avoid arbitration.

**E.    There Are No Factual Issues Relating to Arbitration that Must Be Submitted to a Jury.**

The Bankruptcy Law Firms asserts that it is entitled to a jury trial to decide whether its claim is arbitrable.  *See* FAC at 12 (demanding jury trial "with respect to the issue(s) of whether Bankruptcy Law Firm and the Class ever made any arbitration agreement with Credit Card Company[.]").  The argument not only flies in the face of the many hundreds of cases in which courts have ordered disputes to arbitration, but also would frustrate one of the prime objectives of the agreement to arbitrate, namely "to achieve 'streamlined proceedings and expeditious

results.'"  *Concepcion*, 131 S. Ct. at 1749 (*quoting Preston v. Ferrer*, 552 U.S. 346, 357-58 (2008)).  Under the FAA, courts may unilaterally resolve any motion to dismiss or stay in favor of arbitration – and routinely do so – unless the party seeking to avoid arbitration has adduced evidence sufficient to demonstrate a genuine dispute (*i.e.*, sufficient to survive summary judgment) regarding the formation of the arbitration agreement.  *See, e.g.*, *Cuadras v. MetroPCS Wireless, Inc*., No. CV-09-7897, 2011 U.S. Dist. LEXIS 156399,  at *15 (C.D. Cal. Aug. 8, 2011) (rejecting request for jury trial; "there does not appear to be any genuine issue of material fact as to whether plaintiff was provided with the [agreement containing the arbitration provision]."); *Jones v. GMC*, 640 F. Supp. 2d 1124, 1145-46 (D. Ariz. 2009) ("To be entitled to a jury trial, the party resisting arbitration must 'show the existence of a genuine issue of fact to be tried before a jury.'") (citation omitted).

No jury trial is warranted here.  The material facts regarding the applicability of the Seller Agreement's arbitration provision are all undisputed:  the manner in which the Bankruptcy Law Firm agreed to the Seller Agreement, the language of that agreement, and the language of the arbitration provision.  Leone Decl. ¶¶ 4-8; FAC ¶ 6.  Indeed, the Bankruptcy Law Firm itself relies on the language of the Seller Agreement and its arbitration provision to argue why, as a legal matter, the arbitration provision supposedly should not be enforced.

This Court should therefore decide this motion on the papers; a jury trial here is legally unwarranted.

### CONCLUSION

For the foregoing reasons, Square respectfully requests that this Court issue an order dismissing the Bankruptcy Law Firm's claims in their entirety, or in the alternative, staying the Bankruptcy Law Firm's claims and compelling arbitration.

DATED:  August 6, 2015

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _/s/ Colleen Bal_____

*Attorneys for Defendant*
*Square, Inc.*