WILLIAM McGRANE [057761]
McGRANE LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
(415) 292-4807
william.mcgrane@mcgranellp.com

FRANK R. UBHAUS [046085]
BERLINER COHEN
10 Almaden Boulevard, 11th Floor
San Jose, CA 95113
(408) 286-5800
frank.ubhaus@berliner.com

Attorneys for Plaintiff shierkatz RLLP, a California registered limited liability partnership

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| shierkatz RLLP, a California registered limited liability partnership,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SQUARE, INC., a Delaware corporation,<br><br>　　　　　　　　Defendant. | Case No.  3:15-cv 02202 JST<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>**SECOND AMENDED COMPLAINT FOR UNRUH LAW CIVIL RIGHTS VIOLATIONS** |

Comes now plaintiff shierkatz RLLP (Bankruptcy Law Firm) on behalf of itself and all others similarly situated and alleges as follows:

**The Parties**

1. Bankruptcy Law Firm is a California registered limited liability partnership which has its principle place of business in San Francisco, California.

2. Defendant Square, Inc. (Credit Card Company) is a Delaware corporation registered with the California Secretary of State as a foreign corporation qualified to do business in the State of California and which has its principle place of business in San Francisco, California.

**Jurisdiction and Venue**

3. Jurisdiction is present here based on 28 U.S.C. §§ 1332(d)(2), 1367(a).

4. Venue is present here based on 28 U.S.C. § 1391(d).

**Charging Allegations**

5. Credit Card Company is a business establishment (as that term is otherwise defined in California Civil Code section 51(b)) within the jurisdiction of the State of California, which business establishment is engaged in providing accommodations, advantages, facilities, privileges and/or services (Accommodations) to other persons and entities, specifically including but not limited to citizens of states within the United States other than the states of California and Delaware, within the jurisdiction of the State of California (Persons) by way of its, *inter alia*, enabling such Persons to accept electronic payments without themselves directly opening up a merchant account with any Visa or MasterCard member bank (Square Account).  See https://squareup.com/ (Square Website) for a fuller description of the nature of what a Square Account consists of.

6. On July 14, 2013, at the solicitation of Credit Card Company as made, *inter alia*, through the then-existing version of the Square Website (2013 Square Website), Bankruptcy Law Firm opened a Square Account.

7. On April 16, 2015, Credit Card Company sent Bankruptcy Law Firm an email which wrongfully terminated Bankruptcy Law Firm's Square Account for the stated reason that "your business is prohibited by Section 6 of [Square's] Seller Agreement, which means we cannot accept payments related to your business. ***<u>Unfortunately, our decision to deactivate your account is final.  Due to the obligations of our agreements with card networks and other financial institutions, we cannot reverse this decision and are unable to provide additional details.</u>***" (***Emphasis*** added.) (Final Deactivation Notice [Exhibit 1 hereto].)

8. As of June 25, 2013, the referenced Section 6 of Square's Seller Agreement (2013 Square's Seller Agreement) read, in pertinent part, as follows:

> By creating a Square Account, you … confirm that you will not accept payments in connection with the following businesses or business activities: (1) any illegal activity or goods, (2) buyers or membership clubs, including dues associated with such clubs, (3) credit counseling or credit repair agencies, (4) credit protection or identity theft protection services, (5) direct marketing or subscription offers or services, (6) infomercial sales, (7) internet/mail order/telephone order pharmacies or pharmacy referral services (where fulfillment of medication is performed with an internet or telephone consultation, absent a physical visit with a physician including re-importation of pharmaceuticals from foreign countries), (8) unauthorized multi-level marketing businesses, (9) inbound or outbound telemarketers, (10) prepaid phone cards or phone services, (11) rebate based businesses, (12) up-sell merchants, (13) bill payment services, (14) betting, including lottery tickets, casino gaming chips, off-track betting, and wagers at races, (15) manual or automated cash disbursements, (16) prepaid cards, checks, or other financial merchandise or services, (17) sales of money-orders or foreign currency, (18) wire transfer money orders, (19) high-risk products and services, including telemarketing sales, (20) service station merchants, (21) automated fuel dispensers, (22) adult entertainment oriented products or services (in any medium, including internet, telephone, or printed material), (23) sales of (i) firearms, firearm parts or hardware, and ammunition; or (ii) weapons and other devices designed to cause physical injury (24) internet/mail order/telephone order cigarette, tobacco or vaporizer sales, (25) drug paraphernalia, (26) occult materials, (27) hate or harmful products, (28) escort services, or (29) bankruptcy attorneys or collection agencies engaged in the collection of debt.

9. As of April 16, 2015, the referenced Section 6 of Square's Seller Agreement (2015 Square's Seller Agreement) remained unchanged from that contained in the 2013 Square's Seller Agreement except that the former no longer listed "(20) service station merchants." The 2013 Square's Seller Agreement and the 2015 Square's Seller Agreement are hereafter sometimes collectively referred to as Square's Seller Agreement.

10. With the sole exception of Section 6(1) of Square's Seller Agreement (prohibiting acceptance of payments in connection with any business or business activities involving illegal activity or illegal goods), each and every other category of business/business activity whose business/business activity Credit Card Company deems a "business [that] is prohibited" is either so vaguely described as to be unintelligible or else constitutes an entirely lawful business/business activity under any and all applicable federal and state laws. This specifically includes but is not limited to the business/business activity of Bankruptcy Law Firm, which entity's business establishment (as is more fully described at http://shierkatz.com) requires licensure by the State Bar, admission to the Federal Bar of the Ninth Circuit as well as the Federal Bar of the Northern District of California and other federal districts and which business establishment is otherwise specifically protected from discrimination of the sort being practiced against Bankruptcy Law Firm here by, *inter alia*, 11 U.S.C. § 525, as well as by the Unruh Civil Rights Act (Civil Code §§ 51 and 52 [Unruh Law]).

11. The Final Deactivation Notice did not just terminate Bankruptcy Law Firm's Square Account. Rather, said Final Deactivation Notice also reflected Credit Card Company's general business policy that, at all times relevant herein, and in all cases where it had first terminated a former Square Account holder based on a Section 6 prohibited business violation by said former Square Account holder, Credit Card Company also intended to discriminate against said former Square Account holder following termination by way of Credit Card Company's prospectively refusing to ever let any such former Square Account holder reopen its Square Account, all due to said

former Square Account holder's conclusively-presumed-by-Credit-Card-Company continuing status as a "business [that] is prohibited by Section 6 of [Square's] Seller Agreement" (Post-Termination Unruh Law Violations).

12.     Credit Card Company's Post-Termination Unruh Law Violations were as much a violation of Unruh Law as was the initial termination of Bankruptcy Law Firm's Square Account and are separately not arbitrable for all of the reasons stated below.

**Allegations Respecting Lack of Arbitrability of Credit Card Company's Post-Termination Unruh Law Violations**

13.     Dkts 14, 15 and 16, have previously alleged this case should be dismissed due to the presence of an arbitration clause in Square's Seller Agreement, which arbitration agreement supposedly requires that Bankruptcy Law Firm must submit, *inter alia*, even Post-Termination Unruh Law Violations to individual arbitration and, correspondingly, that Bankruptcy Law Firm may not properly seek to aggregate even Post-Termination Unruh Law Violations by way of class litigation.  See, *inter alia*, ¶ 51 and ¶ 59 of Square's Seller Agreement (said ¶ 51 and ¶ 59 are sometimes hereafter collectively referred to as Square's Arbitration Agreement).  By having previously sought to dismiss the action without also asking the Court to compel arbitration, Square has waived/forfeited whatever right it may have had to seek arbitration. See 9 U.S.C. § 3; Ambler v. BT Ams., Inc., 964 F. Supp. 2d 1169, 1178 (N.D. Cal. 2013) ("the plain language of the FAA demonstrates that a stay, not a dismissal, is the appropriate course of action"); Healy v. Cox Communs., Inc. (In re Cox Enters. Set-Top TV Box Antitrust Litig.), 2015 U.S. App. LEXIS 10710, *17 (10th Cir. June 24, 2015) ("a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.")

14.     At ¶ 59 of the Square Arbitration Agreement, "Disputes" is defined to mean:  "'Dispute' means any claim, controversy, or dispute (whether involving contract, tort, equitable, statutory, or any other legal theory) between you and Square including ***but not limited to*** any claims relating in any way to this [Square Seller's] Agreement

(including its breach, termination, or interpretation), any other aspects of our relationship, Square advertising, and any use of Square software or services.  ***'Dispute' also includes any claims that arose before this [Square's Seller] Agreement and that may arise after termination of this [Square's Seller] Agreement.***"  (***Emphasis*** added.)

15.     Notwithstanding the infinite scope and duration of the term "Disputes" as quoted above, merely by signing up for a Square Account, Bankruptcy Law Firm never, in fact, agreed to Square's Arbitration Agreement to the extent same purports to require them to resolve Disputes of infinite scope and duration with Credit Card Company by way of individual binding arbitrations respecting Post-Termination Unruh Law Violations that arose entirely following their receipt of a Final Deactivation Notice.

16.     The allegations of ¶ 15, *supra*, are true and correct because the 2013 Square Website itself expressly (albeit, in hindsight, inconsistently with the terms of Square's Seller Agreement) affirmatively represented and warranted that opening a Square Account would ***not*** involve Bankruptcy Law Firm in making any commitments to Credit Card Company and/or involve Bankruptcy Law Firm in entering into any long-term contracts with Credit Card Company (Easy Out Rep and Warranty) and said Easy Out Rep and Warranty—which Easy Out Rep and Warranty was something that the partner(s) in Bankruptcy Law Firm did in fact read on the 2013 Square Website and then actually rely upon in later opening a Square Account—must and should now be held to be sufficiently inconsistent with Square's Seller Agreement as to prevent Credit Card Company from enforcing any such inconsistent requirement that Bankruptcy Law Firm must resolve its claims for Post-Termination Unruh Law Violations with Credit Card Company by way of individual binding arbitration and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

17. Put another way, a jury empaneled by the District Court or the District Court itself (as the case may be) should now order Square's Arbitration Agreement limited so as to, at a minimum, make Disputes that "arise after termination" of Square's Seller Agreement, i.e., Bankruptcy Law Firm's Post-Termination Unruh Law Violations, non-arbitrable under Square's Arbitration Agreement.

18. Next, ¶ 54 of Square's Seller Agreement provides: "We [Credit Card Company] have the right to change or add to the terms of this [Square's Seller] Agreement at any time … with [only such] notice that we in our sole discretion deem to be reasonable in the circumstances … However, any Dispute that arose before the modification shall be governed by the Agreement (including the binding individual arbitration clause) that was in place when the Dispute arose."

19. Since (i) Credit Card Company has the unilateral ability to modify and/or even delete the entirety of Square's Arbitration Agreement from Square's Seller Agreement, and (ii) given the very nature of Post-Termination Unruh Law Violations, Credit Card Company also has entire and unilateral control over when any Post-Termination Unruh Law Violations may first arise, Square's Arbitration Agreement is entirely illusory when it comes to all such Post-Termination Unruh Law Violations and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

20. Next, Bankruptcy Law Firm was never made aware that Square's Seller Agreement and/or Square's Arbitration Agreement referred to anything beyond a relationship between Bankruptcy Law Firm as a seller of professional services and Bankruptcy Law Firm's own customers as buyers of professional services and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a

jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is otherwise unenforceable.

21. The allegations of ¶ 20, *supra*, are true and correct because it is only after actually reading Square's Seller Agreement that one first discovers Credit Card Company's misleading and counter-intuitive practice of describing those Persons who pay Credit Card Company for its services as sellers rather than as buyers. Bankruptcy Law Firm thus had no reason to understand that any waiver of any of its own rights against Credit Card Company as a buyer of Credit Card Company's services would be implicated by virtue of its clicking "continue" and thereby allegedly agreeing to the terms of Square's Seller Agreement in order to open a Square Account and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

22. Next, and even if Bankruptcy Law Firm was deemed to have read Square's Seller Agreement and/or Square's Arbitration Agreement, it should not be held bound by same *vis-à-vis* the Post-Termination Unruh Law Violations. Thus, the opening and unnumbered paragraph of Square's Seller Agreement referred to individual arbitration with respect to the otherwise undefined term "any potential legal dispute" (with a small "d") in the sole context of a possible future disagreement between Bankruptcy Law Firm and Credit Card Company respecting the Square Seller Agreement itself. Next, the paragraph immediately preceding the arbitration clause—paragraph 50 of Square's Seller Agreement (¶ 50)—again referred to "individual arbitration" with respect to the otherwise undefined term "a dispute of any kind" (with a small "d") in the sole context of a possible future disagreement between Bankruptcy Law Firm and Credit Card Company respecting Square's Seller Agreement itself.

23. Credit Card Company, however, herein contends that "Disputes" (as used in ¶ 51 of Square's Arbitration Agreement) should be given an entirely different meaning

than that of the undefined term "dispute" (with a small "d"). Meaning Credit Card Company contends that Disputes should be given the same definition of "Disputes" (with a capital "D") as is contained at ¶ 59 of Square's Arbitration Agreement.

24. However, and by putting the infinite scope and duration version of the term "Disputes" nowhere near the front of Square's Seller's Agreement—but instead putting it way back in ¶ 59 of Square's Arbitration Agreement (and thereby separating it by eight full paragraphs from ¶ 51 of Square's Arbitration Agreement)—Credit Card Company must be seen as having physically placed that unconscionably expansive language in a way designed to confuse Persons reading same as to the scope and duration of Square's Arbitration Agreement as set forth ¶ 59 of Square's Arbitration Agreement and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

25. Next, Square's Seller Agreement is a contract of adhesion in that the parties were not of equal bargaining power and it provided Bankruptcy Law Firm with no possible way in which to opt-out to any of its terms and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

26. Next, Square's Seller Agreement provided Bankruptcy Law Firm with no specific notice that the infinite scope and duration version of Square's Arbitration Agreement would apply to violations of laws essential to the public policy of the State of California, such as Unruh Law, and would entirely nullify the State of California's ability to enforce its anti-discrimination policy through the use of the private enforcement mechanisms written into Unruh Law; thus violating the public policy of the State of California by virtue of its thereby attempting to prevent the Bankruptcy Law Firm from

acting herein in its expressly contemplated role of *parens patriae* under the Unruh Law and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

27. Next, Square's Seller Agreement provided Bankruptcy Law Firm with no specific notice that the infinite scope and duration version of Square's Arbitration Agreement would strip Bankruptcy Law Firm of its statutory right to a jury trial under California Civil Code §§ 52, 52.1 even after contract termination had first taken place and with respect to matters that arose thereafter only and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

28. Next, Square's Arbitration Agreement provided Bankruptcy Law Firm with no specific notice that the infinite scope and duration version of Square's Arbitration Agreement was overly broad to the point of its substantive and procedural unconscionability, all as explained in ¶¶ 12–27, *supra*, and since Bankruptcy Law Firm unequivocally denies that it intended to enter into, or in fact entered into, a valid agreement to arbitrate the Post-Termination Unruh Law Violations, a jury empaneled by the District Court or the District Court itself (as the case may be) should declare that same is unenforceable, at least to that extent.

### Class Allegations

29. Bankruptcy Law Firm brings this action on behalf of itself and all others similarly situated.

30. The class represented by Bankruptcy Law Firm (Class) is comprised of all Persons to whom Credit Card Company has ever sent a Final Deactivation Notice constituting Post-Termination Unruh Law Violations despite the fact such a Person was

not accepting payments in connection with any business/business activity involving illegal activity or illegal goods (Class members), which Class members include at least some Persons who are citizens of states within the United States but who are not, in fact, also citizens of either California or Delaware.

31. The Class period extends back to cover only those Final Deactivation Notice[s] constituting Post-Termination Unruh Law Violations sent by Credit Card Company to Class members within three years last past prior to the filing of the initial complaint herein (Class Period).

32. On information and belief Bankruptcy Law Firm alleges that there are tens of thousands of Class members. The identities of Class members can be readily ascertained from the business records of the Credit Card Company.

33. On information and belief, Bankruptcy Law Firm estimates that Credit Card Company has incurred not less than $100,000,000 dollars in minimum statutory liability to Class members during Class Period by sending out Final Deactivation Notice[s] constituting Post-Termination Unruh Law Violations.

34. Questions of law and fact common to the Class predominate over questions affecting only individual members, including, *inter alia*:

➢ Whether, as a threshold matter, Class members are entitled to avoid and/or limit the applicability of some or all of the provisions of Square's Arbitration Agreement and thereby avoid being forced into individual binding arbitration of their Post-Termination Unruh Law Violations claims against Credit Card Company.

➢ Whether Class members are entitled to recover not less than their Unruh Law minimum statutory damages of $4,000 each on account of their receipt of Final Deactivation Notice[s].

35. The claims of Bankruptcy Law Firm are typical of the claims of the Class members as described above.

36. Treating this dispute as a class action is a superior method of adjudication since the joinder of all possible absent Class members would be impractical.

37. Additionally, the amount of each restitutionary payment would be modest on an individual basis, although significant in the aggregate. It would be impractical for most of Class members to address the Credit Card Company's wrongdoings individually. There should be no significant difficulties in managing this case as a class action.

38. Bankruptcy Law Firm can and will fairly and adequately represent and protect the interests of Class members. Bankruptcy Law Firm has retained competent and experienced outside counsel, who will vigorously represent the interests of the Class.

## Sole Claim for Relief

### (Minimum Statutory Damages [Violation of Unruh Law])

39. Bankruptcy Law Firm realleges ¶¶ 1–38.

40. Credit Card Company's sending Bankruptcy Law Firm and Class members the Final Deactivation Notice constituting Post-Termination Unruh Law Violations was a violation of Unruh Law entitling Bankruptcy Law Firm to not less than $4,000 in minimum statutory damages per offense under Unruh Law and the Class to its own minimum statutory damages of $4,000 per Class member per offense under Unruh Law.

WHEREFORE, Bankruptcy Law Firm and Class pray judgment as follows:

1. That Class described herein be certified; that Bankruptcy Law Firm be designated lead plaintiff and that Bankruptcy Law Firm's counsel be appointed Class counsel;

2. That the Bankruptcy Law Firm and Class be awarded statutory damages in an amount to be proven at trial pursuant to Unruh Law.

3. For an award of attorney fees and costs, including but not limited to statutory attorney fees and costs;

4. For such other and further relief as the Court may deem just and proper.

Dated: October 1, 2015

McGRANE LLP
BERLINER COHEN

By: /s/ *William McGrane*
 William McGrane
Attorneys for Plaintiff shierkatz RLLP, a California registered limited liability partnership

**DEMAND FOR JURY TRIAL**

Bankruptcy Law Firm and the Class hereby demand a trial by jury specifically including, but not limited to: (i) a trial by jury as provided for by the General Provisions of the United States Code governing Arbitration (see 9 U. S. C. § 4) with respect to the issue(s) of whether Bankruptcy Law Firm and the Class ever made any arbitration agreement with Credit Card Company *ab initio* that they have unjustifiably failed, neglected, or refused to perform; and (ii) a trial by jury as provided for by the Unruh Law (see California Civil Code §§ 52, 52.1) and the Seventh Amendment of the U.S. Constitution with respect to illegal discrimination based solely on lawful occupation in providing Accommodations.

Dated: October 1, 2015

McGRANE LLP
BERLINER COHEN

By: /s/ *William McGrane*
   William McGrane
Attorneys for Plaintiff shierkatz RLLP, a California registered limited liability partnership

# Exhibit 1

**From:** Square Compliance [mailto:compliance@help-messaging.squareup.com]
**Sent:** Thursday, April 16, 2015 11:30 AM
**To:** matthew shier
**Subject:** Information about your Square account

_____

Hello,

Thanks for writing back in. We understand that this can be a frustrating experience and appreciate hearing from you.

As previously indicated, your account was deactivated because we reviewed your account and found that your business is prohibited by Section 6 of the Square Seller Agreement, which means we cannot accept payments related to your business.

Unfortunately, our decision to deactivate your account is final. Due to the obligations of our agreements with card networks and other financial institutions, we cannot reverse this decision and are unable to provide additional details.

Your outstanding Square balance will be paid out per our normal payment schedule.

For further information about our policies, you can review the Square Seller Agreement on our website (https://squareup.com/legal/seller-agreement).

Again, we apologize for any inconvenience this may have caused.

Sincerely,


Penny
Square Compliance
squareup.com/help